GMP:MPR/CRH/RCH
F. #2015R02080/OCDETF #NYNYE-801

FILED
CLERK

2016 DEC 22 AM 10: 12

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -



S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 16-241 (S-2) (CBA)
(T. 21, U.S.C., §§ 841(b)(1)(A)(i),
841(b)(1)(A)(ii)(II), 841(b)(1)(A)(vii),
841(b)(1)(A)(viii), 846, 848(a), 848(b),
848(c), 853(a), 853(p), 959(d),
960(b)(1)(A), 960(b)(1)(B)(ii),
960(b)(1)(G), 960(b)(1)(H) and 963; T. 18,
U.S.C., §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii),
924(c)(1)(A)(iii), 924(d)(1), 982(a)(1),
982(b)(1), 1956(h), 2, 3238 and 3551
et seq.; T. 28, U.S.C., § 2461(c))



KENIA ALEJANDRA VALDEZ
ALVAREZ,



JOSE DAGOBERTO CORTEZ PEREZ,
also known as "D.C.P.,"

DEOVALDO GUTIERREZ ALFARO,
also known as "Leoba."



Defendants.

– – – – – – – – – – – – – – – – – – X

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Superseding Indictment, unless otherwise indicated:

1.    From at least June 2013 until December 2016, the defendants

3



were members of an international drug trafficking organization led by Juan Patron Sanchez, also known as "H-2" (the "H-2 DTO").

2.     The H-2 DTO operated a vast narcotics transportation network responsible for the manufacture and importation from Mexico into the United States of multi-ton quantities of heroin, methamphetamine and marijuana. The H-2 DTO also was responsible for the shipment of multi-ton quantities of cocaine from South America through Central America and Mexico to the United States. The vast majority of drugs trafficked by the H-2

4

DTO were imported into United States, where the drugs were consumed. The H-2 DTO used corruption as a means and method of achieving its goals.

   3. The H-2 DTO's drug sales in the United States generated millions of dollars in profit. The drug proceeds were then laundered back to Mexico; often the drug money was physically transported from the United States to Mexico through clandestine means.

   4. The H-2 DTO had a structure that included numerous members, including: (a) the leadership of the H-2 DTO, who were the ultimate decision makers in the organization with respect to its drug trafficking and money laundering activities, as well as its corruption and enforcement activities undertaken to preserve and protect its illegal activities; (b) security personnel, who protected the leadership of the H-2 DTO and engaged in violent acts to further the goals of the organization; (c) plaza bosses, who controlled certain territories for the H-2 DTO and were responsible for transporting drugs through those territories; (d) transporters, such as boat crews, pilots and truck drivers, who transported drugs from Colombia through Mexico and into the United States; and (e) money launderers, who funneled drug proceeds from the United States back to Mexico.

   5. The H-2 DTO was engaged in a battle with the Sinaloa Cartel, which was one of Mexico's largest and most violent drug cartels, and other Mexican drug trafficking organizations for control of certain areas of Mexico, including Mazatlán, Sinaloa, Mexico and Tepic, Nayarit, Mexico. As part of the H-2 DTO's efforts to secure this territory and to further its drug trafficking activities, the leaders of the H-2 DTO employed "sicarios," or hitmen, who

5

carried out numerous acts of violence, including murders, assaults, kidnappings and acts of torture. The leaders of the H-2 DTO directed and ordered these acts of violence for a variety of reasons, including but not limited to:

(a)     Promoting and enhancing the prestige, reputation and position of the H-2 DTO with respect to rival criminal organizations;

(b)     Preserving and protecting the power, territory and criminal ventures of the H-2 DTO;

(c)     Enforcing discipline amongst its members and associates by punishing disloyalty and failure; and

(d)     Protecting members of the H-2 DTO from arrest and prosecution by silencing potential witnesses and retaliating against anyone who provided information or assistance to law enforcement authorities.

## COUNT ONE
### (Continuing Criminal Enterprise)

6.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

7.     In or about and between June 2013 and December 2016, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants

6

together with others,

did knowingly and intentionally engage in a continuing criminal enterprise, in that the

defendants

committed violations of Title

21, United States Code, Sections 848(e), 959(a), 960 and 963, including Violations One

through Eighteen set forth below, which violations were part of a continuing series of

violations of those statutes undertaken by the defendants

each of whom was one of several principal administrators, organizers and

leaders of the continuing criminal enterprise, in concert with five or more other persons, with

respect to whom the defendants

7

███████████████████████████████████████████████ occupied a

position of organizer, supervisor, and any position of management, and from which continuing

series of violations the defendants █████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████ obtained

substantial income and resources, and which enterprise received in excess of $10 million in

gross receipts during one or more twelve-month periods for the manufacture, importation and

distribution of heroin, cocaine, methamphetamine and marijuana. At least six of the violations

involved at least 300 times the quantity of a substance described in Section 841(b)(1)(B) of

Title 21, United States Code, to wit: 30 kilograms or more of a substance containing heroin,

150 kilograms or more of a substance containing cocaine and 15 kilograms or more of a

substance containing methamphetamine. The continuing series of violations, as defined by

Title 21, United States Code, Section 848(c), includes the following violations set forth below:

Violation One
(International Heroin Distribution –
Approximately 116 Kilograms of Heroin)

8.     On or about June 10, 2015, within the extraterritorial jurisdiction of the

United States, the defendants ████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████ together with

others, did knowingly and intentionally distribute a controlled substance, intending and

knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offense involved one kilogram or more of a substance containing

heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections

959(a), 960(a)(3), 960(b)(1)(A) and 959(d), and Title 18, United States Code, Section 2.

Violation Two
(International Heroin Distribution –
Approximately 12 Kilograms of Heroin)

9.     On or about August 26, 2015, within the extraterritorial jurisdiction of

the United States, the defendants █████████████████████████████████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████   together with

others, did knowingly and intentionally distribute a controlled substance, intending and

knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offense involved one kilogram or more of a substance containing

heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections

959(a), 960(a)(3), 960(b)(1)(A) and 959(d), and Title 18, United States Code, Section 2.

Violation Three
(International Cocaine Distribution –
Approximately 380 Kilograms of Cocaine)

10.     On or about November 30, 2015, within the extraterritorial jurisdiction of

the United States, the defendants ███████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████   together with

others, did knowingly and intentionally distribute a controlled substance, intending and

9

knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offense involved five kilograms or more of a substance containing

cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code,

Sections 959(a), 960(a)(3), 960(b)(1)(B)(ii) and 959(d), and Title 18, United States Code,

Section 2.

Violation Four<br>
(International Heroin Distribution –<br>
Approximately 225 Grams of Heroin)

11.    On or about December 18, 2015, within the extraterritorial jurisdiction of

the United States, the defendants

together with

others, did knowingly and intentionally distribute a controlled substance, intending and

knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offense involved 100 grams or more of a substance containing heroin, a

Schedule I controlled substance, in violation of Title 21, United States Code, Sections 959(a),

960(a)(3), 960(b)(2)(A) and 959(d), and Title 18, United States Code, Section 2.

Violation Five<br>
(International Heroin Distribution –<br>
Approximately Five Kilograms of Heroin)

12.    On or about February 13, 2016, within the extraterritorial jurisdiction of

the United States, the defendants

10

█████████████████████████████████████████████ together with

others, did knowingly and intentionally distribute a controlled substance, intending and

knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offense involved one kilogram or more of a substance containing

heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections

959(a), 960(a)(3), 960(b)(1)(A) and 959(d), and Title 18, United States Code, Section 2.

Violation Six
(International Cocaine Distribution –
Approximately 200 Kilograms of Cocaine)

13.     On or about March 23, 2016, within the extraterritorial jurisdiction of the

United States, the defendants █████████████████████████████

████████████████████████████████████████████

███████████████████████████████████ together with

others, did knowingly and intentionally distribute a controlled substance, intending and

knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offense involved five kilograms or more of a substance containing

cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code,

Sections 959(a), 960(a)(3), 960(b)(1)(B)(ii) and 959(d), and Title 18, United States Code,

Section 2.

11

Violation Seven
(International Methamphetamine Distribution –
Approximately 7.8 Kilograms of Methamphetamine)

14.     On or about March 31, 2016, within the extraterritorial jurisdiction of the

United States, the defendants

together with

others, did knowingly and intentionally distribute a controlled substance, intending and

knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offense involved 500 grams or more of a substance containing

methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States

Code, Sections 959(a), 960(a)(3), 960(b)(1)(H) and 959(d), and Title 18, United States Code,

Section 2.

Violation Eight
(International Cocaine and Heroin Distribution –
Approximately 2.5 Kilograms of Heroin and 500 Grams of Cocaine)

15.     On or about April 12, 2016, within the extraterritorial jurisdiction of the

United States, the defendants

together with

others, did knowingly and intentionally distribute a controlled substance, intending and

knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offense involved (a) one kilogram or more of a substance containing

12

heroin, a Schedule I controlled substance, and (b) 500 grams or more of a substance containing

cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code,

Sections 959(a), 960(a)(3), 960(b)(1)(A), 960(b)(2)(B)(ii) and 959(d), and Title 18, United

States Code, Section 2.

Violation Nine
(International Heroin Distribution –
At Least 2 Kilograms of Heroin)

16.    On or about April 19, 2016, within the extraterritorial jurisdiction of the

United States, the defendants

together with

others, did knowingly and intentionally distribute a controlled substance, intending and

knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offense involved one kilogram or more of a substance containing

heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections

959(a), 960(a)(3), 960(b)(1)(A) and 959(d), and Title 18, United States Code, Section 2.

Violation Ten
(International Heroin Distribution –
Approximately 250 Kilograms of Heroin)

17.    On or about April 26, 2016, within the extraterritorial jurisdiction of the

United States, the defendants

together with

13

others, did knowingly and intentionally distribute a controlled substance, intending and

knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offense involved one kilogram or more of a substance containing

heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections

959(a), 960(a)(3), 960(b)(1)(A) and 959(d), and Title 18, United States Code, Section 2.

Violation Eleven
(International Marijuana Distribution –
Approximately 406 Kilograms of Marijuana)

18.     On or about May 3, 2016, within the extraterritorial jurisdiction of the

United States, the defendants

together with

others, did knowingly and intentionally distribute a controlled substance, intending and

knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offense involved 100 kilograms or more of a substance containing

marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code,

Sections 959(a), 960(a)(3), 960(b)(2)(G) and 959(d), and Title 18, United States Code,

Section 2.

Violation Twelve
(International Heroin Distribution –
Approximately 10 Kilograms of Heroin)

19.     On or about May 5, 2016, within the extraterritorial jurisdiction of the

United States, the defendants

14

███████████████████████████████████████████
███████████████████████████████████████████ together with

others, did knowingly and intentionally distribute a controlled substance, intending and

knowing that such substance would be unlawfully imported into the United States from a place

outside thereof, which offense involved one kilogram or more of a substance containing

heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections

959(a), 960(a)(3), 960(b)(1)(A) and 959(d), and Title 18, United States Code, Section 2.

Violation Thirteen<br>
(International Methamphetamine Distribution –<br>
Approximately 65 Kilograms of Methamphetamine)

20.    On or about and between May 9, 2016 and May 10, 2016, both dates

being approximate and inclusive, within the extraterritorial jurisdiction of the United States,

the defendants ██████████████████████████████
███████████████████████████████████████████
██████████████████████████ together with others, did

knowingly and intentionally distribute a controlled substance, intending and knowing that such

substance would be unlawfully imported into the United States from a place outside thereof,

which offense involved 500 grams or more of a substance containing methamphetamine, a

Schedule II controlled substance, in violation of Title 21, United States Code, Sections 959(a),

960(a)(3), 960(b)(1)(H) and 959(d), and Title 18, United States Code, Section 2.

15

Violation Fourteen
(International Heroin Distribution –
Approximately Two Kilograms of Heroin)

21.     On or about July 6, 2016, within the extraterritorial jurisdiction of the

United States, the defendants

together with

others, did knowingly and intentionally distribute a controlled substance, intending, knowing

and having reasonable cause to believe that such substance would be unlawfully imported into

the United States from a place outside thereof, which offense involved one kilogram or more

of a substance containing heroin, a Schedule I controlled substance, in violation of Title 21,

United States Code, Sections 959(a), 960(a)(3), 960(b)(1)(A) and 959(d), and Title 18, United

States Code, Section 2.

Violation Fifteen
(International Heroin and Cocaine Distribution –
Approximately Two Kilograms of Heroin and 82 Kilograms of Cocaine)

22.     On or about July 29, 2016, within the extraterritorial jurisdiction of the

United States, the defendants

together with

others, did knowingly and intentionally distribute one or more controlled substances,

intending, knowing and having reasonable cause to believe that such substances would be

unlawfully imported into the United States from a place outside thereof, which offense

16

involved: (a) one kilogram or more of a substance containing heroin, a Schedule I controlled substance; and (b) five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 959(a), 960(a)(3), 960(b)(1)(A), 960(b)(1)(B)(ii) and 959(d), and Title 18, United States Code, Section 2.

Violation Sixteen
(International Heroin Distribution –
Approximately One Kilogram of Heroin)

23.     On or about November 2, 2016, within the extraterritorial jurisdiction of

the United States, the defendants

together with

others, did knowingly and intentionally distribute a controlled substance, intending, knowing and having reasonable cause to believe that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved one kilogram or more of a substance containing heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 959(a), 960(a)(3), 960(b)(1)(A) and 959(d), and Title 18, United States Code, Section 2.

Violation Seventeen
(International Heroin Distribution –
Approximately 31 Kilograms of Heroin)

24.     On or about November 22, 2016, within the extraterritorial jurisdiction of

the United States, the defendants

17

together with

others, did knowingly and intentionally distribute a controlled substance, intending, knowing

and having reasonable cause to believe that such substance would be unlawfully imported into

the United States from a place outside thereof, which offense involved one kilogram or more

of a substance containing heroin, a Schedule I controlled substance, in violation of Title 21,

United States Code, Sections 959(a), 960(a)(3), 960(b)(1)(A) and 959(d), and Title 18, United

States Code, Section 2.

Violation Eighteen<br>(Murder Conspiracy – Persons Who Posed a Threat to the H-2 DTO)

25.     In or about and between June 2013 and December 2016, both dates being

approximate and inclusive, the defendants

together with others, while engaged in one or more offenses punishable under Sections

841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in

Counts Two through Four, did knowingly and intentionally conspire to kill and cause the

intentional killing of one or more persons, to wit: persons who posed a threat to the H-2 DTO,

and such killings did result, contrary to Title 21, United States Code, Section 848(e)(1)(A), in

violation of Title 21, United States Code, Section 846.

(Title 21, United States Code, Sections 848(a), 848(b) and 848(c); Title 18,

United States Code, Sections 3238 and 3551 et seq.)

18

## COUNT TWO
(International Heroin, Cocaine, Methamphetamine and
Marijuana Manufacture and Distribution Conspiracy)

26.    The allegations contained in paragraphs one through five are realleged

and incorporated as if fully set forth in this paragraph.

27.    In or about and between June 2013 and December 2016, both dates being

approximate and inclusive, within the extraterritorial jurisdiction of the United States, the

defendants

KENIA

ALEJANDRA VALDEZ ALVAREZ,

JOSE

19

DAGOBERTO CORTEZ PEREZ, also known as "D.C.P.,"

DEOVALDO GUTIERREZ ALFARO, also known as "Leoba,"

together with

others, did knowingly and intentionally conspire to manufacture and distribute one or more

controlled substances, intending, knowing and having reasonable cause to believe that such

substances would be unlawfully imported into the United States from a place outside thereof,

which offense involved: (a) a substance containing heroin, a Schedule I controlled substance;

(b) a substance containing cocaine, a Schedule II controlled substance; (c) a substance

containing methamphetamine, a Schedule II controlled substance; and (d) a substance

containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States

Code, Sections 959(a) and 960(a)(3). The amount of heroin involved in the conspiracy

attributable to each defendant as a result of his or her own conduct, and the conduct of other

conspirators reasonably foreseeable to him or her, was at least one kilogram or more of a

substance containing heroin. The amount of cocaine involved in the conspiracy attributable to

each defendant as a result of his or her own conduct, and the conduct of other conspirators

reasonably foreseeable to him or her, was at least five kilograms or more of a substance

containing cocaine. The amount of methamphetamine involved in the conspiracy attributable

20

to each defendant as a result of his or her own conduct, and the conduct of other conspirators reasonably foreseeable to him or her, was at least 500 grams or more of a mixture or substance containing methamphetamine. The amount of marijuana involved in the conspiracy attributable to each defendant as a result of his or her own conduct, and the conduct of other conspirators reasonably foreseeable to him or her, was at least 1,000 kilograms of a substance containing marijuana.

(Title 21, United States Code, Sections 963, 960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(G), 960(b)(1)(H) and 959(d); Title 18, United States Code, Sections 3238 and 3551 et seq.)

COUNT THREE
(Heroin, Cocaine, Methamphetamine and
Marijuana Importation Conspiracy)

28. The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

29. In or about and between June 2013 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants

21



KENIA ALEJANDRA VALDEZ ALVAREZ,

JOSE DAGOBERTO CORTEZ PEREZ, also known as "D.C.P.,"

DEOVALDO GUTIERREZ ALFARO, also known as "Leoba,"

together with others, did knowingly and intentionally conspire to import a controlled substance into the United States from a place outside thereof, which offense involved: (a) a substance containing heroin, a Schedule I controlled substance; (b) a substance containing cocaine, a Schedule II controlled substance; (c) a substance containing methamphetamine, a Schedule II controlled substance; and (d) a substance containing marijuana, a Schedule I controlled substance,

22

contrary to Title 21, United States Code, Sections 952(a) and 960(a)(1). The amount of heroin involved in the conspiracy attributable to each defendant as a result of his or her own conduct, and the conduct of other conspirators reasonably foreseeable to him or her, was at least one kilogram or more of a substance containing heroin. The amount of cocaine involved in the conspiracy attributable to each defendant as a result of his or her own conduct, and the conduct of other conspirators reasonably foreseeable to him or her, was at least five kilograms or more of a substance containing cocaine. The amount of methamphetamine involved in the conspiracy attributable to each defendant as a result of his or her own conduct, and the conduct of other conspirators reasonably foreseeable to him or her, was at least 500 grams or more of a mixture or substance containing methamphetamine. The amount of marijuana involved in the conspiracy attributable to each defendant as a result of his or her own conduct, and the conduct of other conspirators reasonably foreseeable to him or her, was at least 1,000 kilograms of a substance containing marijuana.

(Title 21, United States Code, Section 963, 960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(G) and 960(b)(1)(H); Title 18, United States Code, Sections 3551 et seq.)

### COUNT FOUR
(Heroin, Cocaine, Methamphetamine and
Marijuana Distribution Conspiracy)

30.    The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

31.    In or about and between June 2013 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

23

defendants ███████████████████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

██████████████████████████████████████████████ KENIA

ALEJANDRA VALDEZ ALVAREZ, ████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

████████████████████████████████████████████ JOSE

DAGOBERTO CORTEZ PEREZ, also known as "D.C.P.," █████████████

███████ DEOVALDO GUTIERREZ ALFARO, also known as "Leoba," ███

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

24

████████████████████████████████████████████ together with

others, did knowingly and intentionally conspire to distribute and possess with intent to

distribute a controlled substance, which offense involved: (a) a substance containing heroin, a

Schedule I controlled substance; (b) a substance containing cocaine, a Schedule II controlled

substance; (c) a substance containing methamphetamine, a Schedule II controlled substance;

and (d) a substance containing marijuana, a Schedule I controlled substance, contrary to Title

21, United States Code, Section 841(a)(1). The amount of heroin involved in the conspiracy

attributable to each defendant as a result of his or her own conduct, and the conduct of other

conspirators reasonably foreseeable to him or her, was at least one kilogram or more of a

substance containing heroin. The amount of cocaine involved in the conspiracy attributable to

each defendant as a result of his or her own conduct, and the conduct of other conspirators

reasonably foreseeable to him or her, was at least five kilograms or more of a substance

containing cocaine. The amount of methamphetamine involved in the conspiracy attributable

to each defendant as a result of his or her own conduct, and the conduct of other conspirators

reasonably foreseeable to him or her, was at least 500 grams or more of a mixture or substance

containing methamphetamine. The amount of marijuana involved in the conspiracy

attributable to each defendant as a result of his or her own conduct, and the conduct of other

conspirators reasonably foreseeable to him or her, was at least 1,000 kilograms of a substance containing marijuana.

(Title 21, United States Code, Sections 846, 841(b)(1)(A)(i),

841(b)(1)(A)(ii)(II), 841(b)(1)(A)(vii) and 841(b)(1)(A)(viii); Title 18, United States Code,

Sections 3551 et seq.)

## COUNT FIVE
(Use of Firearms in Furtherance of Drug Trafficking)

32.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

33.     In or about and between June 2013 and December 2016, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the

defendants



KENIA

ALEJANDRA VALDEZ ALVAREZ,

26



JOSE

DAGOBERTO CORTEZ PEREZ, also known as "D.C.P.,"

DEOVALDO GUTIERREZ ALFARO, also known as "Leoba,"

together with

others, did knowingly and intentionally use and carry one or more firearms, during and in

relation to one or more drug trafficking crimes, to wit: the crimes charged in Counts One

through Four, and did knowingly and intentionally possess such firearms in furtherance of said

drug trafficking crimes, one or more of which firearms was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii),

924(c)(1)(A)(iii), 2 and 3551 et seq.)

27

## COUNT SIX
(Conspiracy to Launder Narcotics Proceeds)

34.    The allegations contained in paragraphs one through five are realleged
and incorporated as if fully set forth in this paragraph.

35.    In or about and between June 2013 and December 2016, both dates being
approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants

DEOVALDO GUTIERREZ ALFARO, also known

as "Leoba,"

together with others, did knowingly and intentionally conspire to:
(i) conduct one or more financial transactions in and affecting interstate and foreign commerce,
to wit: the transfer and delivery of United States currency, which transactions in fact involved
the proceeds of specified unlawful activity, to wit: narcotics trafficking, in violation of Title
21, United States Code, Sections 841(a)(1), 846, 848, 952(a), 959, 960(a)(1) and 963, knowing
that the property involved in the transactions represented the proceeds of some form of
unlawful activity, (a) with the intent to promote the carrying on of the specified unlawful
activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing
that the transactions were designed in whole and in part to conceal and disguise the nature, the

28

location, the source, the ownership and the control of the proceeds of the specified unlawful activity, and to avoid one or more transaction reporting requirements, contrary to Title 18, United States Code, Section 1956(a)(1)(B); and (ii) transport, transmit and transfer monetary instruments and funds from one or more places in the United States to and through one or more places outside the United States, to wit: one or more locations and recipients in Mexico, (a) with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(2)(A), and (b) knowing that the monetary instruments and funds represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission and transfer were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, and to avoid one or more transaction reporting requirements, contrary to Title 18, United States Code, Section 1956(a)(2)(B).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT ONE

36.     The United States hereby gives notice to the defendants charged in Count One that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853(a), which requires any person convicted of such offense to forfeit: (a) any property constituting, or derived from, any proceeds obtained directly or indirectly as the result of such offense; (b) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such

offense; and (c) any of their interest in, claims against, and property or contractual rights affording a source of control over the continuing criminal enterprise, including but not limited to at least a sum of approximately $250 million in United States currency.

37. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a) and 853(p))

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS TWO, THREE AND FOUR

38. The United States hereby gives notice to the defendants charged in Counts Two, Three and Four that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853(a), which requires any person convicted of such offenses to forfeit: (a) any property constituting, or

30

derived from, any proceeds obtained directly or indirectly as the result of such offenses, and

(b) any property used, or intended to be used, in any manner or part, to commit, or to facilitate

the commission of, such offenses, including but not limited to at least a sum of approximately

$250 million in United States currency.

39.    If any of the above-described forfeitable property, as a result of any act

or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of the defendants up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a) and 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT FIVE

40.    The United States hereby gives notice to the defendants charged in Count

Five that, upon their conviction of such offense, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 924(d)(1) and Title 28, United States

31

Code, Section 2461(c), which require the forfeiture of any firearm or ammunition involved in or used in any knowing violation of Title 18, United States Code, Section 924.

41.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        (a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third party;

        (c)     has been placed beyond the jurisdiction of the court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 924(d)(1); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT SIX

42.     The United States hereby gives notice to the defendants charged in Count Six that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or

32

any property traceable to such property, including but not limited to at least a sum of
approximately $250 million in United States currency.

43.     If any of the above-described forfeitable property, as a result of any act
or omission of the defendants:

    (a)  cannot be located upon the exercise of due diligence;

    (b)  has been transferred or sold to, or deposited with, a third party;

    (c)  has been placed beyond the jurisdiction of the court;

    (d)  has been substantially diminished in value; or

    (e)  has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as
incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendants up to the value of the forfeitable property described in this forfeiture

allegation.

(Title 18, United States Code, Section 982(a)(1) and 982(b)(1); Title 21, United

States Code, Section 853(p))

A TRUE BILL

FOREPERSON

ROBERT L. CAPERS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY:
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. O.136

34

F. #2015R02080/OCDETF #NYNYE-801

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA



Defendants.

## SUPERSEDING INDICTMENT

( T. 21, U.S.C., §§ 841(b)(1)(A)(i), 841(b)(1)(A)(ii)(II), 841(b)(1)(A)(vii),
841(b)(1)(A)(viii), 846, 848(a), 848(b), 848(c), 853(a), 853(p), 959(d),
960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(G), 960(b)(1)(H) and 963; T. 18,
U.S.C., §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 924(d)(1),
982(a)(1), 982(b)(1), 1956(h), 2, 3238 and 3551 et seq.; T. 28, U.S.C.,
§ 2461(c))

*A true bill.*

- - - - - - - - - -                                                    - - - - - - - -
*Foreperson*

*Filed in open court this* _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _*day,*

*of* _ _ _ _ _ _ _ _ _ _ _ _ _ *A.D. 20* _ _ _ _ _

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
*Clerk*

*Bail, $* _ _ _ _ _ _ _ _ _ _ _

**Michael P. Robotti, *Assistant U.S. Attorney, (718) 254-7576***
**Craig R. Heeren, *Assistant U.S. Attorney, (718) 254-6467***